**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| DAN JOHNSON, individually and on behalf of similarly situated individuals, | ) ) ) | |
| *Plaintiff,* | ) ) | |
| v. | ) | Case No. 1:24-cv-01057 |
| | ) | |
| PACIFIC LIFE INSURANCE COMPANY, | ) ) | Hon. Steven C. Seeger |
| | ) | |
| | ) | |
| *Defendant.* | ) | |

**DEFENDANT'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS RULE 12(b)(6) MOTION TO**
**<u>DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT</u>**

## **TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

I.         PLAINTIFF'S AMENDED COMPLAINT ................................................................ 2

II.        GIPA ........................................................................................................................ 3

        A.     The 1997 Act ................................................................................................... 3

        B.     2008 Amendment .............................................................................................. 5

        C.     2014 Amendment .............................................................................................. 7

        D.     2019 Amendment .............................................................................................. 8

III.       FAMILY MEDICAL HISTORY USE BY LIFE INSURERS ................................... 9

ARGUMENT ..................................................................................................................... 10

I.         THE UNDERWRITING PROVISION DOES NOT APPLY TO LIFE INSURANCE .. 11

        A.     PLIC is Not an "Insurer" Regulated by GIPA ....................................................... 12

        B.     Family Medical History Provided to a Life Insurer is Not "Protected Health Information" .................................................................................................... 13

        C.     "Underwriting Purposes," As Defined, Does Not Apply to Life Insurance ......... 15

II.        NO OTHER RELEVANT PART OF THE ACT APPLIES TO LIFE INSURANCE OR WAS INTENDED TO APPLY TO LIFE INSURANCE ......................................... 17

        A.     Other Provisions of Section 20 Relate Only to Health and Accident Insurance, Not Life Insurance ........................................................................................... 17

        B.     The Statutory History Confirms That Neither GIPA Nor the Underwriting Provision Was Meant to Apply to Life Insurance ................................................. 18

        C.     The Purpose of GIPA Would Not Be Served By Plaintiff's Interpretation .......... 19

        D.     Silence from the Illinois Department of Insurance Contradicts Plaintiff's Interpretation .................................................................................................... 20

        E.     The Legislative History Confirms that No One Ever Intended GIPA to Apply to Life Insurers ................................................................................................. 21

III.       PLAINTIFF'S COMPLAINT FAILS TO ALLEGE A COGNIZABLE CLAIM ........... 22

        A.     Plaintiff Fails to Allege Specifically How Defendant Violated Section 20 of GIPA ............................................................................................................... 22

        B.     Plaintiff Did Not Provide Family Medical History and Therefore Has No Claim ............................................................................................................... 24

CONCLUSION ................................................................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adams v. City of Indianapolis*,
    742 F.3d 720 (7th Cir. 2014) ....................................................................................22

*Advanced Physical Med. of Yorkville, LTD. v. United States Off. of Pers. Mgmt.*
    *Healthcare & Ins.*,
    639 F. Supp. 3d 787 (N.D. Ill. 2022) ......................................................................10

*AFM Mattress Co., LLC v. Motorists Com. Mut. Ins. Co.*,
    503 F. Supp. 3d 602 (N.D. Ill. 2020) ........................................................................2

*Anderson v. Honeywell Int'l*,
    2023 WL 6892023 (D. Minn. Sept. 11, 2023) .........................................................24

*In re Asbestos Prod. Liab. Litig. (No. VI)*,
    256 F.R.D. 151 (E.D. Pa. 2009) ...............................................................................15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................22, 23

*Baum v. Dunmire Prop. Mgmt., Inc.*,
    2022 WL 889097 (D. Colo. Mar. 25, 2022) ............................................................24

*Beard v. City of Chicago*,
    2005 WL 66074 (N.D. Ill. Jan. 10, 2005) ................................................................15

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................................10

*Bilek v. Fed. Ins. Co.*,
    8 F.4th 581 (7th Cir. 2021) ......................................................................................11

*Bloomington Mut. Life Ben. Ass'n v. Cummins*,
    53 Ill. App. 530 (Ill. App. Ct. 1894) ...................................................................9, 20

*Brown v. State*,
    2017 WL 9938301 (Vt. Super. Mar. 03, 2017)........................................................15

*Byung Moo Soh v. Target Mktg. Sys., Inc.*,
    817 N.E.2d 1105 (Ill. App. Ct. 2004) ......................................................................12

*People ex rel. Cason v. Ring*,
    41 Ill. 2d 305, 242 N.E.2d 267 (1968) ....................................................................18

*City of Bloomington v. Illinois Lab. Rels. Bd., State Panel*,
373 Ill. App. 3d 599, 871 N.E.2d 752 (2007) ........................................................18

*In re Craig H.*,
215 N.E.3d 143 (Ill. 2022) ....................................................................................12

*Dawkins v. Fitness Int'l, LLC*,
2022 IL 127561, 210 N.E.3d 1184 ......................................................................19

*Duerr v. Bradley Univ.*,
590 F. Supp. 3d 1160 (C.D. Ill. 2022) .................................................................11

*Gaston v. Founders Ins. Co.*,
365 Ill. App. 3d 303, 847 N.E.2d 523 (2006) ......................................................20

*Haage v. Zavala*,
2020 IL App (2d) 190499, 158 N.E.3d 1171, *aff'd*, 2021 IL 125918, 183
N.E.3d 830 ............................................................................................................15

*Hartford Life & Annuity Ins. Co. v. Gray*,
91 Ill. 159 (1878) ..............................................................................................9, 20

*Heard v. Becton, Dickinson & Co.*,
440 F. Supp. 3d 960 (N.D. Ill. 2020) ..................................................................24

*Jones v. Metro. Water Reclamation Dist. of Greater Chicago*,
2018 WL 1508529 (N.D. Ill. Mar. 27, 2018) .....................................................24

*Jones v. Microsoft Corp.*,
649 F. Supp. 3d 679 (N.D. Ill. 2023) ..................................................................24

*Lax v. Mayorkas*,
20 F.4th 1178 (7th Cir. 2021) ..........................................................................2, 11

*Lee v. John Deere Ins. Co.*,
208 Ill. 2d 38, 802 N.E.2d 774 (2003) ................................................................21

*Mackey v. Nationwide Ins. Companies*,
724 F.2d 419 (4th Cir. 1984) ...............................................................................10

*In re Marriage of Rogers*,
85 Ill. 2d 217, 422 N.E.2d 635 (1981) .................................................................18

*McCombs v. Reliance Standard Life Ins. Co.*,
2023 WL 3763526 (N.D. Ill. June 1, 2023) ........................................................21

*McKinley v. Princeton Univ.*,
2023 WL 3168026 (D.N.J. Apr. 28, 2023) ..........................................................24

iii

*Milner-Koonce v. Albany City Sch. Dist.*,
2022 WL 7351196 (N.D.N.Y. Oct. 13, 2022) ........................................................24

*N.A.A.C.P. v. Am. Fam. Mut. Ins. Co.*,
978 F.2d 287 (7th Cir. 1992) ...............................................................................10

*People v. Easley*,
119 Ill. 2d 535, 519 N.E.2d 914 (1988) ..............................................................22

*People v. Giraud*,
2012 IL 113116, 980 N.E.2d 1107 ......................................................................17

*People v. Maldonado*,
386 Ill. App. 3d 964, 897 N.E.2d 854 (2008) ......................................................18

*Primeco Pers. Commc'ns, L.P. v. I.C.C.*,
750 N.E.2d 202 (Ill. 2001) ..................................................................................17

*Ryan v. Bd. of Trustees of Gen. Assembly Ret. Sys.*,
236 Ill. 2d 315, 924 N.E.2d 970 (2010) ..............................................................11

*Sullivan v. All Web Leads, Inc.*,
2017 WL 2378079 (N.D. Ill. June 1, 2017) ...................................................12, 15

*Tedesco v. Pearson Educ., Inc.*,
2021 WL 2291148 (E.D. La. June 4, 2021) .........................................................24

*United States v. Thayer*,
40 F.4th 797 (7th Cir. 2022) ...............................................................................16

*Venture Assocs. Corp. v. Zenith Data Sys. Corp.*,
987 F.2d 429 (7th Cir. 1993) ...............................................................................24

*Vose v. Eagle Life & Health Ins. Co.*,
60 Mass. 42 (1850) ...............................................................................................9

*City of Chicago ex rel. Walton v. Prog Leasing, LLC*,
2023 IL App (1st) 220714, 222 N.E.3d 274 .......................................................11

**Statutes**

215 ILCS 5/143(1) ......................................................................................................21

215 ILCS 5/356t ...........................................................................................................4

215 ILCS 125/5-3 .........................................................................................................4

215 ILCS 130/4003 .......................................................................................................4

215 ILCS 165/10 ..................................................................................................4, 5

410 ILCS 513/5 ...................................................................................................3, 19

410 ILCS 513/5(5) ...................................................................................................7

410 ILCS 513/10 ............................................................................................. passim

410 ILCS 513/15 ......................................................................................................4

410 ILCS 513/20 ...................................................................................................4, 5

410 ILCS 513/20(a) ...............................................................................................17

410 ILCS 513/20(b) ........................................................................................ passim

410 ILCS 513/20(b)(1) ...........................................................................................23

410 ILCS 513/20(b)(2) ...........................................................................................23

410 ILCS 513/20(b)(4) ..........................................................................................2, 16

410 ILCS 513/20(c) ................................................................................................17

410 ILCS 513/20(e) ..................................................................................................9

26 U.S.C. § 9832(d)(7)(A) ........................................................................................6

26 U.S.C. § 9832(d)(10) ...........................................................................................6

29 U.S.C. § 1191b(d)(6)(A) ......................................................................................6

29 U.S.C. § 1191b(d)(9) ...........................................................................................6

42 U.S.C. § 300gg-91(d)(16)(A) ..............................................................................6

42 U.S.C. § 300gg-91(d)(16)(C) ............................................................................25

42 U.S.C. § 300gg-91(d)(19) ....................................................................................6

42 U.S.C. § 1395ss(x)(3)(B)(i) .................................................................................6

42 U.S.C. § 1395ss(x)(3)(E) .....................................................................................6

42 U.S.C. § 1395x(s) ...........................................................................................14, 15

42 U.S.C. § 1395x(u) ..........................................................................................14, 15

Genetic Information Nondiscrimination Act of 2008 (Pub. L. 110–233, May 21,
    2008, 122 Stat 881) ...................................................................................... passim

Genetic Information Privacy Act, 1997 Ill. Legis. Serv. P.A. 90-25 ..................................... *passim*

Health Insurance Portability and Accountability Act .......................................... *passim*

**Other Authorities**

45 C.F.R. § 160.103 ................................................................................... *passim*

45 C.F.R. § 164.502(5)(i) ..............................................................................7

78 FR 5566-01 (Jan. 25, 2013) .......................................................................7

8 New Appleman on Insurance Law Library Edition § 83.06[3] (2023)......................20

Dr. R. D. C. Brackenridge, Dr. Richard S. Croxson, & Dr. Ross Mackenzie,
    *Medical Selection of Life Risks* 37 (5th ed. 2006) .............................................9, 10

Fed. R. Civ. P. 12(b)(6)......................................................................10, 11, 22

*Genetic information*, 21 Ill. Prac., The Law of Medical Practice in Illinois § 14:11
    (3d ed.) .........................................................................................7

H.R. 2189, 101st Gen. Assemb., 1st Reg. Sess. (Ill. 2019) .....................................8

H.R. Tr. 101-33, Reg. Sess. (Ill. 2019) .............................................................9

H.R. Tr. 90-43, Reg. Sess. (Ill. 1997) ...........................................................4, 5

H.R. Tr. 95-276, Reg. Sess. (Ill. 2008) ..........................................................4, 6

*Health Insurance in the Age of Genetics*, National Human Genome Research
    Institute (July 1997), https://www.genome.gov/10000879/1997-release-health-
    insurance-in-the-age-of-genetics; .................................................................4

Ill. Admin. Code, tit. 50, § 1405.20 .................................................................21

Ill. Admin. Code, tit. 50, § 1405.30 .................................................................21

Karen H. Rothenberg, *Genetic Information and Health Insurance: State
    Legislative Approaches*, 23 J.L. Med. & Ethics 312, 313 (1995)...............................3

Kathy L. Hudson et al., *Keeping Pace with the Times: the Genetic Information
    Nondiscrimination Act of 2008*, 358 New Eng. J. Med. 2661, 2663 (2008) ...........6

Richard Karlsson Linnér & Philipp D. Koellinger, *Genetic risk scores in life
    insurance underwriting* ...........................................................................9

S. 2399, 95th Gen. Assemb., 2nd Reg. Sess. (Ill. 2007)........................................6

S. Tr. 90-26, Reg. Sess. (Ill. 1997) ................................................................5

S. Tr. 90-27, Reg. Sess. (Ill. 1997) ................................................................5

S. Tr. 95-166, Reg. Sess. (Ill. 2008) ...............................................................6

*Your Rights Under HIPAA*, HHS (last visited Mar. 3, 2024),
    https://www.hhs.gov/hipaa/for-individuals/guidance-materials-for-
    consumers/index.html ..............................................................................13

Defendant, Pacific Life Insurance Company[1] ("PLIC" or "Defendant"), submits this Memorandum of Law in Support of its Rule 12(b)(6) Motion to Dismiss Plaintiff Dan Johnson's ("Plaintiff") Amended Complaint in its entirety.[2]

## **INTRODUCTION**

Plaintiffs' Amended Complaint must be dismissed. As outlined below, the Illinois Genetic Information Privacy Act ("GIPA" or the "Act") simply does not apply to life insurance.

The Act—on its face—conclusively establishes that life insurers are excluded from "insurers" regulated under the Act. Indeed, the legislative history makes clear that GIPA was never intended to apply to life insurance. Notwithstanding, Plaintiff alleges the Act prohibits PLIC and all other life insurers from using one of the oldest and most widely accepted practices in life insurance underwriting—consideration of family medical history—based on a single sentence in the Act that provides: "An insurer shall not use or disclose protected health information that is genetic information for underwriting purposes." 410 ILCS 513/20(b); (First Amended Complaint, ECF 16 ("FAC"), ¶ 2) (the "Underwriting Provision"). That provision, however, does not apply because there has been no use or disclosure of "protected health information." Notably, GIPA incorporates by reference the definition of "protected health information" from the Health Insurance Portability and Accountability Act ("HIPAA"), which defines "individually identifiable health information" as information that "[i]s created or received by a health care provider, health plan, employer, or health care clearinghouse." *See* 410 ILCS 513/10; 45 C.F.R. § 160.103. Life insurers like Defendant are none of these, and thus, on this basis alone, this case should be dismissed.

---

[1] The case was initially filed against both PLIC and Pacific Life & Annuity Company ("PLIA"). With his now amended complaint, Plaintiff has dropped his claims against PLIA.
[2] This Court previously granted Defendant's motion to file a Memorandum in excess of the page limitations. See ECF No. 11.

In amending his complaint, Plaintiff recognizes this obvious flaw and now attempts to argue that the medical or paramedical exam for life insurance qualifies as the provision of healthcare. This argument fails out of the gate: the purpose of the exam is to evaluate the insured for life insurance, not to provide healthcare. Additionally, Plaintiff's Amended Complaint fails to cure several fatal flaws that PLIC clearly laid out in its prior motion to dismiss, including that Plaintiff has no viable claim fails because the Underwriting Provision defines "underwriting purposes" to only apply to "activities related to the creation, renewal, or replacement of a contract of health insurance or health benefits." 410 ILCS 513/20(b)(4). As such, the Underwriting Provision simply and expressly does not apply to life insurance. But even if it did (which it does not), Plaintiff's claim must still be dismissed because mere solicitation is not a violation of the Act. Plaintiff did not disclose any family medical history on his application, and thus, no genetic information could have been "used" by Defendant.

For each and all of these reasons, the complaint should be dismissed.

## BACKGROUND

## I.    PLAINTIFF'S AMENDED COMPLAINT

In January 2019, Plaintiff applied for life insurance with PLIC.[3] *See* FAC ¶¶ 27, 30. Plaintiff alleges that, in connection with his application, Defendant "require[ed] prospective customers such as Plaintiff, to disclose their family medical histories," "Defendant required Plaintiff to undergo a medical physical examination," and "[d]uring the medical examination, the third-party healthcare provider's medical staff required Plaintiff to answer questions concerning

---

[3] *See* attached Declaration of Deidre Beckley and Plaintiff's application attached thereto. This Court may consider the application and related policy documents relied on by Plaintiff. *See Lax v. Mayorkas*, 20 F.4th 1178, 1181 n.1 (7th Cir. 2021) ("District courts may . . . consider other documents attached to a motion to dismiss when they are referenced in the complaint and central to the plaintiff's claim."). This is often appropriate for insurance policies the plaintiff failed to attach to his or her complaint. *See, e.g., AFM Mattress Co., LLC v. Motorists Com. Mut. Ins. Co.*, 503 F. Supp. 3d 602, 604 (N.D. Ill. 2020).

his family medical history." FAC ¶¶ 5, 31, 33. Plaintiff also alleges that "[i]n response, [he] answered and disclosed information regarding his family members' inheritable diseases and disorders." FAC ¶ 34. Plaintiff alleges that "Defendant then use[d] this protected health information that is genetic information in connection with its rules for determining eligibility for insurance coverage" and "to assess [his] eligibility for life insurance coverage and . . . compute premiums," and thus, he contends that his "sensitive genetic information was considered and used by Defendant for underwriting purposes" in violation of GIPA. FAC ¶¶ 37, 38.

## II.    GIPA

Plaintiff contends that Defendant violated GIPA in sole reliance on the Underwriting Provision which states: "[a]n insurer shall not use or disclose protected health information that is genetic information for underwriting purposes." 410 ILCS 513/20(b). This plain language and its context, including two decades of legislative history, establish clearly that GIPA does not apply to life insurance, but instead was designed to apply to health insurance.

### A.    The 1997 Act

In the early 1990s, policymakers began to be concerned about the implications of the Human Genome Project and genetic testing accessible to the general public. The early focus was almost exclusively on health insurance. *See* Karen H. Rothenberg, *Genetic Information and Health Insurance: State Legislative Approaches*, 23 J.L. Med. & Ethics 312, 313 (1995). Illinois responded in 1997 with GIPA to address fears that, in the health insurance context, despite their usefulness, genetic "test results will be disclosed without consent or be used in a discriminatory manner." 1997 Ill. Legis. Serv. P.A. 90-25 (H.B. 8), S.H.A. 410 ILCS 513/5 (the "1997 Act").[4] The local genesis of the bill was a constituent concerned about losing health insurance coverage.

---

[4] For the Court's convenience, Defendant is filing an appendix in support containing all legislative history in chronological order.

H.R. Tr. 90-43, Reg. Sess., at 183–84 (Ill. 1997) (statement of sponsor Rep. Moffitt); *see Health Insurance in the Age of Genetics*, National Human Genome Research Institute (July 1997), https://www.genome.gov/10000879/1997-release-health-insurance-in-the-age-of-genetics; H.R. Tr. 95-276, Reg. Sess. (Ill. 2008) (statement of Rep. Moffitt recalling the 1997 Act).

The 1997 Act defined "genetic testing" as "a test of a person's genes, gene products, or chromosomes for abnormalities or deficiencies" linked to disorders, diseases, or environmental genetic damage. *Id.*, S.H.A. 410 ILCS 513/10. The 1997 Act provided that "information derived from genetic testing" is confidential and limited the use of such information by insurers and employers. *Legislative synopsis and digest*, H.B. 8, Appendix, Ex. 6; 1997 Ill. Legis. Serv. P.A. 90-25 (H.B. 8), S.H.A. 410 ILCS 513/15 (confidentiality and privileged status), 20 (use of genetic testing information for insurance purposes), 25 (use of genetic testing information by employers). The 1997 Act did not further define genetic testing information.

As passed, the 1997 Act's insurance-related provisions applied to "an insurer" defined as "(i) an entity that transacts an insurance business, and (ii) a managed care plan," *i.e.*, "a plan that establishes, operates, or maintains a network of health care providers." 1997 Ill. Legis. Serv. P.A. 90-25 (H.B. 8), S.H.A. 410 ILCS 513/10. The main provision applicable to insurers precluded them from seeking, disclosing, or using information derived from genetic testing "in connection with a policy of accident and health insurance" unless voluntarily submitted. *Id.*, 410 ILCS 513/20. The 1997 Act mandated that "[a]fter the effective date . . . , an insurer must comply with the provisions of the [Act] in connection with the amendment, delivery, issuance, or renewal of, or claims for or denial of coverage under, an individual or group policy of accident and health insurance." *Id.*, S.H.A. 215 ILCS 5/356t. It also extended compliance to various health plans and services. *Id.*, S.H.A. 215 ILCS 125/5–3, 130/4003, 165/10.

The 1997 Act's insurance-related Provisions were clearly and expressly limited in every instance to "accident and health insurance." *Id.*, 410 ILCS 513/20. Indeed, in presenting the 1997 Act, Representative Donald Moffitt confirmed that "[t]his legislation does not include life insurance, since [the] objective was to make sure there is no discrimination on other insurance, essentially health insurance and employment." H.R. Tr. 90-43, Reg. Sess., at 184 (Ill. 1997); *see also id.*, at 190 ("Moffitt: 'Life insurance is not included in this.' Brady: 'So they can ask for a DNA sampling to underwrite life insurance under this legislation?' Moffitt: 'This does not apply to life insurance as it's written.'").[5] Senator Carl E. Hawkinson further confirmed that "we have removed life insurance from this bill" due to the concern that "someone could be tested and find out that there's a long term problem and run out and purchase life insurance without disclosing that information." S. Tr. 90-27, Reg. Sess., at 143 (Ill. 1997). *See also* S. Tr. 90-26, Reg. Sess., at 44 (Ill. 1997) ("It's always been our intention to exclude life insurance from the coverage of this bill, and we accepted the suggestion of the industry to remove the paragraph that they had some questions about.").

### B.    2008 Amendment

In 2008, the federal government enacted the Genetic Information Nondiscrimination Act of 2008 ("GINA"). PL 110–233, May 21, 2008, 122 Stat 881. Finding that "Congress clearly has a compelling public interest in relieving the fear of discrimination and in prohibiting its actual practice in employment and health insurance," GINA prohibited such discrimination—addressing

---

[5] Indeed, even with regard to these applicable types of insurance, the Illinois legislature "did not want to exclude any current practice, whether it's physical characteristics, cholesterol tests, blood tests, urine tests, HIV or drug tests, or others from the ability of the [health insurance] companies to do what they currently do." S. Tr. 90-26, Reg. Sess., at 44 (Ill. 1997); *see also* H.R. Tr. 90-43, Reg. Sess., at 184 (Ill. 1997) (similar); S. Tr. 90-27, Reg. Sess., at 145 (Ill. 1997) (similar).

the employment and health insurance contexts in two titles.[6] *Id.*, § 2. GINA provided a definition for "genetic information" that included "with respect to any individual, information about—(i) such individual's genetic tests, (ii) the genetic tests of family members of such individual, and (iii) the manifestation of a disease or disorder in family members of such individual." *Id.*, § 102(a)(1)(B); 26 U.S.C. § 9832(d)(7)(A); 29 U.S.C. § 1191b(d)(6)(A); 42 U.S.C. § 300gg-91(d)(16)(A); 42 U.S.C. § 1395ss(x)(3)(B)(i). GINA also mandated that applicable health plans "shall not request, require, or purchase genetic information for underwriting purposes," defined as "(A) rules for, or determination of, eligibility (including enrollment and continued eligibility) for benefits under the plan or coverage; (B) the computation of premium or contribution amounts under the plan or coverage; (C) the application of any pre-existing condition exclusion under the plan or coverage; and (D) other activities related to the creation, renewal, or replacement of a contract of health insurance or health benefits." *Id.*, § 102(a)(1)(B); 26 U.S.C. § 9832(d)(10); 29 U.S.C. § 1191b(d)(9); 42 U.S.C. § 300gg-91(d)(19); 42 U.S.C. § 1395ss(x)(3)(E).

In 2008, the Illinois legislature amended GIPA to incorporate certain federal definitions from GINA (including the definition of "genetic information") and to enhance the provisions against employers. S. 2399, 95th Gen. Assemb., 2nd Reg. Sess. (Ill. 2007); *see* S. Tr. 95-166, Reg. Sess. (Ill. 2008) ("This is -- makes certain reenactment of the federal Genetic Information Nondiscrimination Act of 2008."); H.R. Tr. 95-276, Reg. Sess. (Ill. 2008).

---

[6] The application to health insurance is limited to federal contexts, such as ERISA, Medicare, and APA exchange plans. *Id*. The bill was purposely not extended to life insurance, acknowledging different insurance contexts. *See* Kathy L. Hudson et al., *Keeping Pace with the Times: the Genetic Information Nondiscrimination Act of 2008*, 358 New Eng. J. Med. 2661, 2663 (2008).

### C.     2014 Amendment

In 2013, the United States Department of Health and Human Services ("HHS") passed an omnibus rule to update HIPAA regulations. 78 FR 5566-01 (Jan. 25, 2013). The rule included a prohibition against health and long-term care insurers using and disclosing genetic information in underwriting. 45 C.F.R. § 164.502(5)(i). HHS imported GINA's definition of "underwriting purposes" to "make[ ] clear that the definition applies only for purposes of the prohibition on a health plan's use or disclosure of genetic information for underwriting purposes." 78 FR 5566, at 5665; *see Genetic information*, 21 Ill. Prac., The Law of Medical Practice in Illinois § 14:11 (3d ed.) ("The Omnibus Rule . . . clarifies that genetic information is health information, and prohibits health plans, including group health plans, health insurance issuers (including HMOs), and issuers of Medicare supplemental policies, from using or disclosing genetic information for underwriting purposes.").

In 2014, the Illinois legislature amended GIPA to ensure that "disclosure of genetic information, when allowed by this Act, [ ] be performed in accordance with the minimum necessary standard when required under HIPAA." 2014 Ill. Legis. Serv. P.A. 98-1046 (H.B. 5925) (the "2014 Amendment"), S.H.A. 410 ILCS 513/5(5). More broadly, the 2014 Amendment inserted many provisions to align GIPA with HIPAA. *Id.*, S.H.A. 410 ILCS 513/10.[7]

Notably, the 2014 Amendment to GIPA also inserted the Underwriting Provision relied on by Plaintiff into Section 20, mandating that "[a]n insurer shall not use or disclose protected health information that is genetic information for underwriting purposes." 2014 Ill. Legis. Serv. P.A. 98-1046 (H.B. 5925), S.H.A. 410 ILCS 513/20(b). The 2014 Amendment incorporated by reference

---

[7] HIPAA applies only to the healthcare sector, defining "covered entities" as: "(1) A health plan[;] (2) A health care clearinghouse[; and] (3) A health care provider who transmits any health information in electronic form in connection with a transaction covered by this subchapter." 45 C.F.R. § 160.103.

certain HIPAA definitions, including the definition of "protected health information," which is defined as "individually identifiable health information" (subject to certain exclusions that are inapplicable here). *Id.*, S.H.A. 410 ILCS 513/10; *see also* 45 C.F.R. § 160.103. In turn, HIPAA defines "individually identifiable health information" as:

> information that is a subset of health information, including demographic information collected from an individual, and:
> (1) **Is created or received by a health care provider, health plan, employer, or health care clearinghouse; and**
> (2) Relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual; and
> (i) That identifies the individual; or
> (ii) With respect to which there is a reasonable basis to believe the information can be used to identify the individual.

*Id.* (emphasis added). Thus, as written, the Underwriting Provision does not prohibit the use of all defined "genetic information," but only "***protected health information*** that is genetic information," 410 ILCS 513/20(b) (emphasis added), and to qualify as "protected health information," the genetic information must have been created or received by health care providers or institutions primarily in the context of providing health care.

### D. 2019 Amendment

In 2019, the Illinois legislature considered and rejected proposed legislation that sought to extend GIPA to life insurance. The proposed bill sought to prohibit insurers from seeking and using "information derived from genetic testing for use in connection with . . . life insurance." H.R. 2189, 101st Gen. Assemb., 1st Reg. Sess. (Ill. 2019). Specifically, the proposed bill would have extended subsections (a) and (c) of Section 20 to long-term care and life insurance. *Id*.

The final bill removed all of these proposed changes and instead added a subsection to Section 20 prohibiting "[a] company providing direct-to-consumer commercial genetic testing . . . from sharing any genetic test information or other personally identifiable information about a consumer with any health or life insurance company without written consent from the consumer."

2019 Ill. Legis. Serv. P.A. 101-132 (H.B. 2189), S.H.A. 410 ILCS 513/20(e) (emphasis added); *see* H.R. Tr. 101-33, Reg. Sess. (Ill. 2019) (Rep. Manley explaining that the bill had a "gut and replace amendment" that passed with no discussion). This additional subsection (e) remains the only reference to life insurance in GIPA.

## III.    FAMILY MEDICAL HISTORY USE BY LIFE INSURERS

Life insurers have been soliciting and relying on family medical history since at least the 19th century. *See, e.g.*, *Hartford Life & Annuity Ins. Co. v. Gray*, 91 Ill. 159, 164–66 (1878) (finding a material misrepresentation in a negative response by the insured to the question "Have either of your parents, brothers or sisters ever had pulmonary, scrofulous, or any mental or constitutional or hereditary disease?"); *Bloomington Mut. Life Ben. Ass'n v. Cummins*, 53 Ill. App. 530, 538–39 (Ill. App. Ct. 1894) (recognizing that an insurer has the right to family medical history from the insured and that such history was material to issuance of the policy in question); *Vose v. Eagle Life & Health Ins. Co.*, 60 Mass. 42, 42–43 (1850) (considering potential misrepresentations in responses to family medical history questions). The use of family medical history is a traditional part of the core insurance function of risk classification for life insurance. As such, it is universally acknowledged and approved by regulators who have routinely and consistently approved application forms that call for and incorporate family medical history.

> The object of risk classification is to protect the insurance company and control mortality experience by declining the severest risks (i.e., those with expected mortality requiring a premium that would encourage antiselection as it would be too high to be acceptable to most persons) and charging an extra premium commensurate with the expected extra mortality for insurable but substandard risks. Each person must pay a premium in proportion to the risk in order to maintain equity among all policy owners.

Dr. R. D. C. Brackenridge, Dr. Richard S. Croxson, & Dr. Ross Mackenzie, *Medical Selection of Life Risks* 37 (5th ed. 2006); *see* Richard Karlsson Linnér & Philipp D. Koellinger, *Genetic risk scores in life insurance underwriting*, Journal of Health Economics 81, 3 (2022) ("Diagnosed

medical conditions, as well as severe illness or premature death (e.g., before age 65) among close family members, are particularly important [actuarially justified underwriting factors], and this category contains an abundance of risk classes for various medical conditions and their subtypes. It is standard practice in most countries to request information about family members to infer hereditary disorders.") (citations removed). For example, heart disease is known to greatly correlate with a person's family history whether due to common genetic or environmental factors. Brackenridge, *Medical Selection*, *supra* at 335–36. A responsible insurer may classify differently similar insureds with different family histories regarding heart disease. If it did not, the threat becomes anti-selection, meaning that insureds who know they present a higher mortality risk would exploit premiums set at a level they know to be too cheap. Such a result would increase overall premiums and be inequitable for other insureds. *See, e.g.*, *N.A.A.C.P. v. Am. Fam. Mut. Ins. Co.*, 978 F.2d 287, 298 (7th Cir. 1992) ("[T]he insurance industry has traditionally classified risks. If insurance premiums are to remain at reasonable levels for most [policyowners], some insurers must be permitted to reject risks which are perceived to be excessively high, while charging higher premiums on some risks than upon others.") (quoting *Mackey v. Nationwide Ins. Companies*, 724 F.2d 419, 423 (4th Cir. 1984)).

## ARGUMENT

Under Fed. R. Civ. P. 12(b)(6), a complaint must be dismissed if it fails "to state a claim upon which relief can be granted." "Dismissal for failure to state a claim is proper 'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief.'" *Advanced Physical Med. of Yorkville, LTD. v. United States Off. of Pers. Mgmt. Healthcare & Ins.*, 639 F. Supp. 3d 787, 790 (N.D. Ill. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007)). While the court should "construe the complaint in the light most favorable to the plaintiff,"

it "need not accept as true statements of law or unsupported conclusory factual allegations." *Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021) (quoting *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021)).

Questions of statutory interpretation are adjudicated on a motion to dismiss as a matter of law. *See Duerr v. Bradley Univ.*, 590 F. Supp. 3d 1160, 1168 (C.D. Ill. 2022). Because GIPA is an Illinois law, Illinois rules regarding statutory interpretation apply. *Id.* at 1168–69. "Our primary goal when interpreting the language of a statute is to ascertain and give effect to the intent of the legislature. The plain language of a statute is the best indication of the legislature's intent. Where the statutory language is clear and unambiguous, we will enforce it as written and will not read into it exceptions, conditions, or limitations that the legislature did not express." *Ryan v. Bd. of Trustees of Gen. Assembly Ret. Sys.*, 236 Ill. 2d 315, 319, 924 N.E.2d 970, 973 (2010). Importantly, "[w]hen a statute defines terms used within the statute, those terms must be construed according to the definitions contained in the act." *City of Chicago ex rel. Walton v. Prog Leasing, LLC*, 2023 IL App (1st) 220714, ¶ 20, 222 N.E.3d 274, 279 (cleaned up).

Plaintiff's entrepreneurial effort to extend GIPA to requests by life insurers for family medical histories fails for multiple reasons. Any or all of these defects necessitate dismissal of the complaint under Federal Rule of Civil Procedure 12(b)(6).

# I. THE UNDERWRITING PROVISION DOES NOT APPLY TO LIFE INSURANCE

To support his claims, Plaintiff relies entirely on the Underwriting Provision in Subsection 20(b) of GIPA, which provides in pertinent part that "[a]n insurer shall not use or disclose protected health information that is genetic information for underwriting purposes." 410 ILCS 513/20(b). Plaintiff points to GIPA's definition of "genetic information," which incorporates by reference HIPAA's definition and technically includes "[t]he manifestation of a disease or disorder in family

members of such individual." 410 ILCS 513/10; 45 C.F.R. § 160.103. Plaintiff then concludes that Defendant's use of family medical history is forbidden for life insurance underwriting. However, Plaintiff's interpretation of GIPA is erroneous and precluded by the plain language of the Act.

### A.    PLIC is Not an "Insurer" Regulated by GIPA

Plaintiff's interpretation first fails because the definition of "insurer" in GIPA does not include life insurance companies. GIPA defines "insurer" to mean "(i) an entity that is subject to the jurisdiction of the Director of Insurance and (ii) a managed care plan." 410 ILCS 513/10. Managed care plan, in turn, means "a plan that establishes, operates, or maintains a network of *health care providers* . . ." *Id.* (emphasis added). The use of the conjunctive term "and" shows that *both* requirements must be met in order to be an "insurer" covered by the statute. *See Byung Moo Soh v. Target Mktg. Sys., Inc.*, 817 N.E.2d 1105, 1109 (Ill. App. Ct. 2004) ("As a general rule the use of the conjunctive, as in the word 'and,' indicates that the legislature intended for *all* of the listed requirements to be met."); *cf. In re Craig H.*, 215 N.E.3d 143, 151 (Ill. 2022) (finding the plain language unambiguously denoted separate alternatives by using the word "or").

This interpretation is consistent with the original text of Section 20. Specifically, the original text of Section 20 as enacted by the Illinois legislature in 1997 regulated the seeking and use of genetic testing information solely in connection with accident and health insurance:

> § 20. Use of genetic testing information for insurance purposes.
> (a) An insurer may not seek information derived from genetic testing for use **in connection with a policy of accident and health insurance**. Except as provided in subsection (b), an insurer that receives information derived from genetic testing may not use the information for a nontherapeutic purpose as it relates to a policy of accident and health insurance.
> (b) An insurer may consider the results of genetic testing **in connection with a policy of accident and health insurance** if the individual voluntarily submits the results and the results are favorable to the individual.
> (c) An insurer that possesses information derived from genetic testing may not release the information to a third party, except as specified in Section 30.

12

Genetic Information Privacy Act, 1997 Ill. Legis. Serv. P.A. 90-25 (emphasis added). Thus, the plain language contained in the definition of "insurer" as used in Section 20 has always reflected an express legislative intent to exclude life insurers like PLIC from GIPA's reach. This Court should reject any argument by Plaintiff to construe "insurer" to include any entities other than accident and health insurers as evidenced by the plain language of the Act.

**B.     Family Medical History Provided to a Life Insurer is Not "Protected Health Information"**

Plaintiff's interpretation also fails because the Underwriting Provision does not prohibit the use of all defined "genetic information," but only "***protected health information** that is genetic information." 410 ILCS 513/20(b) (emphasis added). As explained above, GIPA expressly incorporates by reference HIPAA's definition of "protected health information," which means "individually identifiable health information" subject to certain exclusions. 45 C.F.R. § 160.103. HIPAA defines "individually identifiable health information" as:

> information that is a subset of health information, including demographic information collected from an individual, and:
> (1) Is created or received by a health care provider, health plan, employer, or health care clearinghouse; and
> (2) Relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual; and
> (i) That identifies the individual; or
> (ii) With respect to which there is a reasonable basis to believe the information can be used to identify the individual.

*Id*. This definition is thus limited to health information that is or was "***created or received by a health care provider, health plan, employer, or health care clearinghouse**." This case, however, is about life insurance, not health insurance, and there is no involved "health care provider, health plan, employer, or health care clearinghouse."[8]

---

[8] Consistent with this result, HIPAA only applies to covered entities, which are all health related. *Supra* at 7 n.6; *see Your Rights Under HIPAA*, HHS (last visited Mar. 3, 2024), https://www.hhs.gov/hipaa/for-individuals/guidance-materials-for-consumers/index.html (guidance explaining the scope of HIPAA and

Through his amended complaint, Plaintiff attempts to correct this flaw (and only this flaw) by claiming that his family medical history was solicited from him by a "third-party healthcare provider", namely the medical and paramedical service that either the Defendant or the agent contracted with as part of the application process to meet with the insured, help fill out the medical part of the application, and collect samples from the insured for laboratory testing. *See* FAC ¶¶ 25–27, 31–37, 54-55. Plaintiff tries to bolster this claim that this was the provision of "healthcare" by consistently calling this a "medical" examination and alluding to the collection of blood and personal identifying information. *See* FAC ¶¶ 25, 27, 31, 33, 35, 58.

Yet Plaintiff knows this crass attempt to paint the examination as "medical" has nothing to do with HIPAA's definition of "protected health information"—as he admits, for the purposes of class certification, that "[w]hether Defendant obtained Plaintiff's and the other Class members' genetic information from a healthcare provider" would be a point of dispute in this case. FAC ¶ 44(b). The overwhelming error here is that however "medical" a service may appear, if its purpose is to assess an insured for life insurance, it is not covered by HIPAA, as it is simply *not* the provision of healthcare. HIPAA defines a "health care provider" as "a provider of services (as defined in section 1861(u) of the Act, 42 U.S.C. 1395x(u)), a provider of medical or health services (as defined in section 1861(s) of the Act, 42 U.S.C. 1395x(s)), and any other person or organization who furnishes, bills, or is paid for health care in the normal course of business." 45 C.F.R. § 160.103. Plaintiff fails to allege which parts of the definition apply, but the referenced subsection (u) means "a hospital, critical access hospital, rural emergency hospital, skilled nursing facility, comprehensive outpatient rehabilitation facility, home health agency, hospice program, or, . . . a fund" and subsection (s) focuses on various *services* meant to improve or address a patient's health,

listing life insurers as an express example of organizations that have health information, but are not subject to HIPAA).

none of which apply here. 42 U.S.C. §§ 1395x(s), (u). Nowhere does Plaintiff allege that those carrying out the examination did so to provide him healthcare—nor can he. It is overwhelmingly clear that the examination is for Defendant to assess Plaintiff for life insurance. Courts have rejected similar arguments before and this Court should do so here. *See In re Asbestos Prod. Liab. Litig. (No. VI)*, 256 F.R.D. 151, 154–55 (E.D. Pa. 2009) (rejecting certain doctors' classification as "health care providers" under HIPAA "because [the doctors] were not consulted by the Plaintiffs for physician services, but rather for the purposes of obtaining a diagnosis to be relied upon in initiating an asbestos personal injury suit") (citing 45 C.F.R. § 160.103; 42 U.S.C. §§ 1395x(u), (s)); *see also Sullivan v. All Web Leads, Inc.*, 2017 WL 2378079, at *6 (N.D. Ill. June 1, 2017) (rejecting argument that calls to advertise more affordable health insurance qualified as the provision of health care under HIPAA); *Beard v. City of Chicago*, 2005 WL 66074, at *2 (N.D. Ill. Jan. 10, 2005) (finding "questionable" the claim that the Chicago Fire Department's medical section qualifies as a healthcare provider under HIPAA because "[i]t does not appear that the Department's medical section actually provides medical care; it evaluates medical conditions (and pays for fitness for return to duty evaluations) not for the purpose of treatment, but for the purpose of determining fitness to return to work"); *Brown v. State*, 2017 WL 9938301, at *2 (Vt. Super. Mar. 03, 2017) (finding consulting physician who conducted an independent medical evaluation for litigation purposes is not a health care provider under HIPAA); *Haage v. Zavala*, 2020 IL App (2d) 190499, ¶ 40, 158 N.E.3d 1171, 1184–85, *aff'd*, 2021 IL 125918, ¶ 40, 183 N.E.3d 830 (finding a property and casualty insurer not to be a health care provider under HIPAA).

**C.** **"Underwriting Purposes," As Defined, Does Not Apply to Life Insurance**

Plaintiff's interpretation further fails on the plain language because the Underwriting Provision applies to use of protected health information for "underwriting purposes" and then gives

a discrete meaning for "underwriting purposes" involving several subsections. Each subsection describes aspects of health insurance that are completely inapplicable to life insurance:

> (b) An insurer shall not use or disclose protected health information that is genetic information for underwriting purposes. ***For purposes of this Section, "underwriting purposes" means, with respect to an insurer:***
> (1) rules for, or determination of, ***eligibility*** (including enrollment and continued eligibility) for, or determination of, ***benefits*** under the plan, coverage, or policy (including changes in ***deductibles*** or other ***cost-sharing mechanisms*** in return for activities such as completing a ***health risk assessment*** or participating in a ***wellness program***);
> (2) the computation of premium or contribution amounts under the plan, coverage, or policy (including discounts, rebates, payments in kind, or other ***premium differential mechanisms in return for activities, such as completing a health risk assessment or participating in a wellness program***);
> (3) the application of any ***pre-existing condition exclusion*** under the plan, coverage, or policy; and
> (4) ***other activities related to the creation, renewal, or replacement of a contract of health insurance or health benefits***.
> "Underwriting purposes" does not include determinations of ***medical appropriateness*** where an individual seeks a benefit under the plan, coverage, or policy.
> This subsection (b) does not apply to insurers that are issuing a long-term care policy, excluding a nursing home fixed indemnity plan.

410 ILCS 513/20(b) (emphasis added). Underwriting based on claim eligibility, wellness programs, exclusions based on preexisting conditions, benefits, copays, etc. are all—as the clarifying subsection (b)(4) itself describes—"activities related to the creation, renewal, or replacement of a contract of health insurance or health benefits." *Id.* 513/20(b)(4). This is not surprising because the text was adopted verbatim from GINA and its implementing regulation. *Supra* at 6–8. And just as GINA does not apply to life insurance, so too this provision does not apply to life insurance. *See United States v. Thayer*, 40 F.4th 797, 804 (7th Cir. 2022) ("[A]s a general matter, when statutory language is obviously transplanted from other legislation, we have reason to think it brings the old soil with it.") (cleaned up); *supra* at 5–6. Since all of these subsections only relate to health insurance or health benefits—as expressly stated in subsection (b)(4)—there is simply no basis for the Underwriting Provision to apply to life insurance in general

16

or specifically the use of family medical history in underwriting life insurance policies or premiums.

## II. NO OTHER RELEVANT PART OF THE ACT APPLIES TO LIFE INSURANCE OR WAS INTENDED TO APPLY TO LIFE INSURANCE

Although this case can begin and end with the plain language definitions of "insurer," "protected health information," and "underwriting purposes," other language in the Act and its context further establishes that the Underwriting Provision does not apply to life insurance.

### A. Other Provisions of Section 20 Relate Only to Health and Accident Insurance, Not Life Insurance

"In determining the plain meaning of statutory terms, we consider the statute in its entirety, keeping in mind the subject it addresses and the apparent intent of the legislature in enacting it." *People v. Giraud*, 2012 IL 113116, ¶ 6, 980 N.E.2d 1107, 1110. "In other words, statutes should be construed as a whole, with each provision evaluated in connection with every other section." *Primeco Pers. Commc'ns, L.P. v. I.C.C.*, 750 N.E.2d 202, 212 (Ill. 2001).

Other provisions of Section 20 further confirm that the Act does not apply to life insurance. Subsection 20(a) states outright that "[a]n insurer may not seek information derived from genetic testing for use in connection with a policy of accident and health insurance." 410 ILCS 513/20(a) (emphasis added). Similarly, subsection 20(c) states that "[a]n insurer may consider the results of genetic testing in connection with a policy of accident and health insurance if the individual voluntarily submits the results and the results are favorable to the individual." *Id.* (emphasis added). Thus, when Section 20 is read in its entirety—as required under Illinois law—the only plausible interpretation of the underwriting Provision (subsection 20(b)) is that it too is limited to accident and health insurance as well.

**B.     The Statutory History Confirms That Neither GIPA Nor the Underwriting Provision Was Meant to Apply to Life Insurance**

"The primary purpose of statutory construction is ascertainment of the legislative purpose and intent. To that end, consideration of the history and course of the legislation is always proper." *People ex rel. Cason v. Ring*, 41 Ill. 2d 305, 310, 242 N.E.2d 267, 270 (1968). In that spirit, "statutes are construed with reference to the law existing prior to their enactment, in order to ascertain their purpose." *In re Marriage of Rogers*, 85 Ill. 2d 217, 221, 422 N.E.2d 635, 638 (1981). Stated otherwise, "when we determine the intent of the legislature as to a particular act or amendment, we are not confined to its literal language, but may consider its history and subsequent amendments." *People v. Maldonado*, 386 Ill. App. 3d 964, 968, 897 N.E.2d 854, 859 (2008). And specifically, "[a] statute should not be construed to effect a change in the settled law of the State unless its terms clearly require such a construction." *City of Bloomington v. Illinois Lab. Rels. Bd., State Panel*, 373 Ill. App. 3d 599, 608, 871 N.E.2d 752, 760 (2007).

As set forth above, when passed in 1997, GIPA's insurance-related provisions expressly and unambiguously applied to health and accident insurers, as well as health plans and services. *Supra* at 3–5. GIPA's evolution in subsequent years primarily consisted of attempts to conform to evolving federal law, which itself never extended to life insurance. *Supra* at 6–9. It would therefore be unreasonable to conclude that that the Illinois Legislature's 2014 Amendment, and in particular, the adoption of the Underwriting Provision was intended to expand the reach of Act beyond health and accident insurance. Rather, it is self-evident that the legislature never intended the Act to apply to life insurance and the mere adoption of GINA's implementing regulation does not change this fact. *Supra* at 6–9.

18

### C. The Purpose of GIPA Would Not Be Served By Plaintiff's Interpretation

"In giving effect to the statutory intent, the court should consider, in addition to the statutory language, the reason for the law, the problems to be remedied, and the objects and purposes sought. It is also true that statutes must be construed to avoid absurd results. When a proffered reading of a statute leads to absurd results or results that the legislature could not have intended, courts are not bound to that construction, and the reading leading to absurdity should be rejected." *Dawkins v. Fitness Int'l, LLC*, 2022 IL 127561, ¶ 27, 210 N.E.3d 1184, 1190 (citations removed).

> GIPA provides the following legislative findings to support its enactment:
>
> (1) The use of genetic testing can be valuable to an individual.
> (2) Despite existing laws, regulations, and professional standards which require or promote voluntary and confidential use of genetic testing information, many members of the public are deterred from seeking genetic testing because of fear that test results will be disclosed without consent in a manner not permitted by law or will be used in a discriminatory manner.
> (3) The public health will be served by facilitating voluntary and confidential nondiscriminatory use of genetic testing information.
> (4) The use of electronic health record systems and the exchange of patient records, both paper and electronic, through secure means, including through secure health information exchanges, should be encouraged to improve patient health care and care coordination, facilitate public health reporting, and control health care costs, among other purposes.
> (5) Limiting the use or disclosure of, and requests for, protected health information to the minimum necessary to accomplish an intended purpose, when being transmitted by or on behalf of a covered entity under HIPAA, is a key component of health information privacy. The disclosure of genetic information, when allowed by this Act, shall be performed in accordance with the minimum necessary standard when required under HIPAA.

410 ILCS 513/5. The first three findings were included by the original 1997 Act. *Supra* at 3–5. The primary thrust is to prevent undue disclosure and discrimination in the public health context based on genetic testing information so people are not deterred from getting genetic tests. This context is far afield from life insurers' use of family medical history to make underwriting decisions and such use does *nothing* to deter people from getting genetic tests. The last two statutory findings were added in 2014 to integrate HIPAA, as modified by GINA, into GIPA.

*Supra* at 5–8. And as explained above at 8–9, HIPAA and GINA do not apply—and were never intended to apply—to life insurance. They and GIPA are focused on confidentiality in health care.

While family medical history is irrelevant to the purposes of GIPA, it is very important to the life insurance industry and life insurance as a product in general. Family medical history allows life insurers to accurately price mortality risks presented by different insureds and ensure that premiums remain low and equitable. Indeed, courts in Illinois and elsewhere have long regarded answers about family medical history to be so material that false answers can justify voiding policies. *See Gray*, 91 Ill. at 164–66; *Cummins*, 53 Ill. App. at 538–39; 8 New Appleman on Insurance Law Library Edition § 83.06[3] (2023) ("Misrepresentations regarding a proposed insured's family medical history are material where the nondisclosure affects the insurer's assessment of the risk."). It would be absurd to assume that the Illinois legislature banned this well-established practice *sub-silentio* by (1) failing to expressly, directly, and immediately cabin the underwriting Provision to health and accident insurance when importing GINA's language, and (2) importing an unintuitive inclusion of family member genetic conditions and diseases into the definition of "genetic information"—a definition that the Illinois legislature has no input on or control over.

### D. Silence from the Illinois Department of Insurance Contradicts Plaintiff's Interpretation

Plaintiff's interpretation should be rejected for the additional reason that, after the enactment of GIPA and its amendments, the Illinois Department of Insurance has approved numerous application forms, including Defendant's, that expressly solicit family medical history. Under Illinois law, "[w]here the Director of Insurance takes no action against an insurance policy provision, it can be inferred that the Director felt the provision did not violate any part of the Insurance Code." *Gaston v. Founders Ins. Co.*, 365 Ill. App. 3d 303, 319, 847 N.E.2d 523, 536

(2006). In addition, "the approval of the Director is entitled to great weight, although it is not conclusive on the courts." *Lee v. John Deere Ins. Co.*, 208 Ill. 2d 38, 47, 802 N.E.2d 774, 779 (2003).

Life insurers' solicitation of family medical history is widely accepted and well-known. Form applications have included questions designed to collect family medical history both prior to and after the 2014 Amendment. Notably, Illinois law "requires companies providing life insurance to file policies and other documentation with the Director of Insurance." *McCombs v. Reliance Standard Life Ins. Co.*, 2023 WL 3763526, at *11 (N.D. Ill. June 1, 2023); *see* 215 ILCS 5/143(1). This includes "application blanks." *Id*.; *see* Ill. Admin. Code, tit. 50, § 1405.30 (laying out some specific requirements for applications). In addition, the Director is required to evaluate and approve this documentation unless it is "unjust, unfair, inequitable, ambiguous, misleading, inconsistent, deceptive, contrary to law or to the public policy of this State." *Id*.; *see* Ill. Admin. Code, tit. 50, § 1405.20 (laying out procedure for filing). To date, the Director or Department of Insurance has not said or done anything that would indicate that the family medical history questions are or were "contrary to law." Notably, the form application submitted by Plaintiff is dated 2016 and was therefore approved after the 2014 Amendment. Beckley Decl., Ex. B (bottom left corner). That approval should persuade this Court that Plaintiff's interpretation of GIPA is incorrect.

E.    **The Legislative History Confirms that No One Ever Intended GIPA to Apply to Life Insurers**

The last reason GIPA's Underwriting Provision does not apply to life insurance is because members of the legislature have told us so. "In ascertaining legislative intent, courts may examine the history of the legislation and the course it has taken. In studying the legislative history, courts

may consider the notes and reports of the commission pursuant to which a statutory provision was adopted." *People v. Easley*, 119 Ill. 2d 535, 540, 519 N.E.2d 914, 916 (1988) (citations removed).

As explained above at 5–7, when GIPA was originally passed, the sponsors deliberately excluded life insurance from the statute's scope as a categorical matter. The bill initially was intended to apply broadly and then was reduced down to apply primarily to health insurance, as well as employment. In 2014, the Act was amended to conform GIPA to HIPAA and GINA, and there is no legislative history to indicate that the legislature intended to ban the age-old life insurance underwriting practice of collecting family medical history. Then in 2019, the Illinois Legislature considered and substantially rejected a proposed bill that sought to extend GIPA to life insurance. Put simply, the legislative history evidences that no one in the Illinois legislature actually believes that GIPA's Underwriting Provision applies to life insurance and forbids the use of family medical history in life insurance underwriting. Plaintiff's theory is simply wrong.

## III. PLAINTIFF'S COMPLAINT FAILS TO ALLEGE A COGNIZABLE CLAIM

Aside from being wrong about the statute's applicability, Plaintiff also fails to allege a legally cognizable claim under GIPA, meriting dismissal under Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), Plaintiff's Complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, "threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014).

### A. Plaintiff Fails to Allege Specifically How Defendant Violated Section 20 of GIPA

Plaintiff's complaint is deficient in several ways and should be dismissed on each of these bases. First, Plaintiff fails to allege how exactly Defendant violated GIPA's Underwriting

Provision. While Plaintiff complains that Defendant "required [him] to undergo a medical physical examination," and "[d]uring the medical examination, the third-party healthcare provider's medical staff required Plaintiff to answer questions concerning his family medical history," FAC ¶¶ 31, 33, he does not allege that Defendant used such information for underwriting purposes in any specific way. Mere solicitation, i.e., Defendant asking for or requiring information, is not enough to violate the law.[9] The statute only prohibits "use or disclosure" for underwriting purposes. 410 ILCS 513/20(b).

Plaintiff's remaining allegation that Defendant "used [his] protected health information that included genetic information to assess Plaintiff's eligibility for life insurance coverage in accordance to its rules for determining eligibility and, further, to compute his premium under the policy," *see* FAC ¶ 37, is insufficient to plead a viable claim. Notably, this allegation is nothing more than a conclusory recital of the statutory Provision. *See* 410 ILCS 513/20(b)(1)-(2) (defining "underwriting purposes" as including "determination[ ] of eligibility" and "the computation of premium"); *see also Iqbal*, 556 U.S. at 678 ("threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice"). Plaintiff leaves the reader spellbound as to what specific information Plaintiff disclosed, what Plaintiff's eligibility and premiums actually were, how and whether the specific information would affect eligibility or the computation of premium, and whether Defendant even used such information for eligibility or the computation of premium. The type of information is particularly important because not all family medical history is "genetic information" under GIPA.[10] Many courts have interpreted the term

---

[9] Despite some amendments, Plaintiff continues to wrongfully believe mere solicitation is a violation of the Act. *See* FAC ¶ 8. He takes this wrongful position because, despite not offering any actual family medical history in his own application, he continues to press his claim and relies on the fact that he was merely asked for information. FAC ¶¶ 54-55.

[10] In the amended complaint, Plaintiff added allegations implying that "other" protected health information was used by Defendant in underwriting. *E.g.*, FAC ¶¶ 37, 58. Not only is this wrong because no protected

(under GINA) to refer narrowly to genetic conditions or medical conditions with a genetic basis. *See*, *e.g.*, *Anderson v. Honeywell Int'l*, 2023 WL 6892023, at *2 (D. Minn. Sept. 11, 2023); *McKinley v. Princeton Univ.*, 2023 WL 3168026, at *3 (D.N.J. Apr. 28, 2023); *Milner-Koonce v. Albany City Sch. Dist.*, 2022 WL 7351196, at *4 (N.D.N.Y. Oct. 13, 2022); *Baum v. Dunmire Prop. Mgmt., Inc.*, 2022 WL 889097, at *7 (D. Colo. Mar. 25, 2022); *Tedesco v. Pearson Educ., Inc.*, 2021 WL 2291148, at *6 (E.D. La. June 4, 2021). All of these deficiencies merit dismissal. *See Jones v. Microsoft Corp.*, 649 F. Supp. 3d 679, 685 (N.D. Ill. 2023) (dismissing BIPA complaint because the "allegations 'merely parrot' the BIPA's statutory language" and do not specify what the defendant did to "obtain" the data rather than merely possess it); *Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 966–67 (N.D. Ill. 2020) (same).

### B. Plaintiff Did Not Provide Family Medical History and Therefore Has No Claim

Second, Plaintiff's Complaint should be dismissed because based on the documents Plaintiff relies on—namely, his insurance application—he did not provide any family medical history, which means that Defendant necessarily and conclusively did not use or disclose Plaintiff's family medical history. *See Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 432–33 (7th Cir. 1993) (affirming dismissal of claim as precluded by document produced by defendant); *Jones v. Metro. Water Reclamation Dist. of Greater Chicago*, 2018 WL 1508529, at *4 (N.D. Ill. Mar. 27, 2018) (dismissing FMLA complaint based on requests not meeting statutory requirements, as referenced in the complaint and produced by defendant).

In the application, Plaintiff was asked the following: "Has there been a diagnosis or treatment by a professional health care provider for diabetes, cancer, high blood pressure, heart or

---

health information was generated directly or indirectly by Defendant, but also because Defendant has not and cannot claim that such use would be wrongful in any way.

kidney disease, alcoholism, mental illness, or suicide in your family?" Plaintiff responded "no." Beckley Decl., Ex. B, § 3(f). Plaintiff was also asked to identify causes of death for his parents or siblings, to which he answered that they are all alive and gave only their ages. *Id*. Because none of this is genetic information, and, in fact, "information about the sex or age of any individual" is specifically excluded from the federal definition of "genetic information," Plaintiff has not and cannot allege a viable claim against Defendant under the GIPA. 410 ILCS 513/10; 45 C.F.R. § 160.103; 42 U.S.C. § 300gg-91(d)(16)(C). His Complaint must therefore be dismissed.

## CONCLUSION

Based on the foregoing reasons, Defendant Pacific Life Insurance Company respectfully requests that the First Amended Complaint be dismissed with prejudice.

Dated: April 11, 2024               Respectfully submitted,

By:    */s/  Wendy N. Enerson*
        Wendy N. Enerson (ARDC# 6272377)
        COZEN O'CONNOR
        123 N. Wacker Drive, Suite 1800
        Chicago, Illinois 60606
        Phone: (312) 382-3100
        wenerson@cozen.com

        Michael J. Miller (*pro hac vice*)
        Ilya Schwartzburg (*pro hac vice*)
        COZEN O'CONNOR
        One Liberty Place
        1650 Market Street
        Philadelphia, PA 19103
        mjmiller@cozen.com
        ISchwartzburg@cozen.com

        *Attorneys for Defendant*
        *Pacific Life Insurance Company*